UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   Case No.: 6:17-cr-187-RBD-TBS

HELEN JONES,               DISPOSITIVE MOTION

        Defendant.

_____/

**DEFENDANT HELEN JONES' MOTION TO DISMISS
THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE**

        COMES NOW Defendant HELEN JONES ("Ms. Jones"), and pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, moves to dismiss the Indictment for failing to state an offense against her.  In support of her Motion, Ms. Jones respectfully shows the Court the following:

**I.      Introduction.**

        The Indictment alleges two distinct schemes to defraud arising from a failed resort condominium development in the Orlando, Florida area.  The first scheme allegedly involved false representations made to financial institutions to induce them to loan money to the owner/developer.  These allegations, if accepted as true, state the offense of bank fraud under 18 U.S.C. § 1844.

        The second scheme is expressly described as a "scheme to defraud the purchasers of condominium units."  This alleged scheme to defraud was not directed at a financial institution, and its purpose was not to obtain property owned by or in the custody of a financial institution.  Accordingly, the second scheme to defraud alleged in the Indictment does not constitute bank

fraud under 18 U.S.C. § 1344.

Ms. Jones is only alleged to have participated in the second scheme to defraud. Because the second scheme does not state the offense of bank fraud, the Indictment against Ms. Jones should be dismissed.

## II.     Allegations in the Indictment.

Ms. Jones is charged, along with three other defendants, with nineteen (19) counts of bank fraud, in violation of 18 U.S.C. § 1344. (Doc. 12.) The Indictment alleges two schemes to defraud, both of which allegedly related to the construction and sale of condominiums in five resort developments in the Orlando area (the "Lake Austin Resort"). (*Id.*, ¶ 6.) Defendant James Moore is alleged to have owned and controlled Lake Austin Properties I, Ltd. ("Lake Austin Properties"), the borrower and developer of Lake Austin Resort. (*Id.*) Defendants Stephanie Lunde and Eric Johnson are former employees of BankFirst, the originating lender to Lake Austin Properties. (*Id.*, ¶¶ 2-3.) Finally, Ms. Jones served as vice president of sales at Maesbury Homes, Inc. and vice president of sales at Lake Austin Properties. (*Id.*, ¶ 4.)

The first alleged scheme to defraud (the "Bank Scheme") involved a scheme to defraud the lenders to Lake Austin Properties. As noted, BankFirst was the originating lender to Lake Austin Properties, and it extended a revolving condominium construction loan to Lake Austin Properties in 2007. (*Id.*, ¶ 8.) Bank First "participated 100% of this loan to approximately 68 financial institutions throughout the United States," including two banks in Kansas. (*Id.*)

The Indictment describes the manner and means of the "scheme to defraud the participant financial institutions" (*i.e.,* the Bank Scheme) as follows:

- The paying of commissions out of buyer's down payments, and the disguising of those commissions as "marketing expenses" (*id.,* ¶¶ 31-33);

2

- False representations to the lenders that Lake Austin had obtained $30 million in additional funding from another entity, H&O, LLC (*id.*, ¶¶ 34-36);

- Lake Austin using "$25 million from participant funding of the loan for Parcel C and unit purchasers' deposits to satisfy the outstanding balance due and owing to BankFirst and other participants in the loan for Parcel A," (*id.*, ¶ 37);

- "Lake Austin submitted false financial statements for 2005 to obtain the loan," with the knowledge of Defendants Lunde and Johnson (*id.*, ¶¶ 38-39);

- "[T]hat BankFirst personnel including defendants Lunde and Johnson, knew Lake Austin fired their auditors after that accounting firm recalled the opinion on Lake Austin's 2005 financial statements," (*id.,* ¶ 40);

- "[T]hat BankFirst personnel including defendants Lunde and Johnson, knew that Lake Austin paid commissions to Darrencrest in violation of Florida statutes and the contract with purchasers," (*id.*, ¶ 41);

- "[T]hat BankFirst personnel including defendants Lunde and Johnson knew Lake Austin submitted false financial statements for 2007" (*id.*, ¶ 42); and

- "[T]hat Lake Austin ignored the loan conditions" related to the construction of the condominium units (*id.*, ¶ 43.)

Notably, none of the allegations describing the manner and means of the "scheme to defraud the participant financial institutions" reference Ms. Jones. Although several of the allegations reference Lake Austin generally - *i.e.,* "Lake Austin submitted false financial statements for 2005 to obtain the loan" - the Indictment describes Ms. Jones' role with Lake Austin as limited to "communicat[ing] with property buyers in sending correspondence and answering questions." (*Id.*, ¶ 4.) The Indictment does not allege any involvement by Ms. Jones in any of the actions related to the financing of Lake Austin Resort. Moreover, none of the overt acts set forth in the Indictment underlying the Bank Scheme reference Ms. Jones. (*Id.*, ¶ 46.)

The second scheme to defraud alleged in the Indictment was a "scheme to defraud the individual purchasers of condominium units at Lake Austin" (the "Purchaser Scheme"). (*Id.*, ¶

3

27.)    The Indictment alleges that beginning in 2004, Lake Austin Properties (through an intermediary company) solicited potential purchasers for condominiums in the Lake Austin Resort.  (*Id.*, ¶ 14.)  Approximately 1,687 investors in the United Kingdom made down payments totaling approximately $159 million, which were then deposited in Maesbury Homes' account at Mercantile Bank in Orlando.  (*Id.*, ¶¶ 5, 15.)  The Indictment described the manner and means of the Purchaser Scheme as follows:

- "It was part of the scheme to defraud the purchasers of condominium units at Lake Austin that their down payments were not placed into a traditional escrow account, but rather the account of Maesbury Homes." (*Id.*, ¶ 28.)

- "It was further part of the scheme to defraud the purchasers of condominium units at Lake Austin that commissions were paid from their down payments to Instant Access Properties/Darrencrest, despite the contracts or sales agreements prohibiting such commissions from the down payments." (*Id.*, ¶ 29.)

- "It was further part of the scheme to defraud the purchasers of condominium units at Lake Austin that an additional payments for a "rental guarantee" ensured the purchaser's units would have rental income and that this additional payment would cover the "closing costs" for the purchase of the unit." (*Id.*, ¶ 30.)

The Indictment alleges Ms. Jones' participation in several overt acts underlying the Purchaser Scheme, including her receipt of funds from the Maesbury Homes account for the construction of her home, which are alleged to have been "deposits from buyers of condominium units at Lake Austin."  (*Id.*, ¶¶ 46(m), 46(r)).  The Indictment further alleges that Ms. Jones: (1) failed to inform condominium purchasers of a foreclosure filing against Lake Austin in 2009; (2) sought to convince condominium purchasers in May 2010 to remain invested and not request refunds, and (3) sought to convince purchasers in February 2011 "to alter the unit purchased to one of the units recently completed in the first tower of Parcel C, and (4) that she informed the

4

purchasers in September 2011 that the project would be completed despite the delays.  (*Id.*, ¶¶ 46(ee), (ff), (gg), and (hh)).    All of these alleged overt acts were directed toward the condominium buyers, and not any financial institution.  The Indictment further does not allege that any of these overt acts were intended to obtain, or did obtain, the money or property of any financial institution.

## III.    Memorandum of Law.

### A.  Legal Standard.

Rule 7 of the Federal Rules of Criminal Procedure requires an indictment to contain a "plan, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  Generally, an indictment is sufficient if it "1) presents the essential elements of the charged offense, 2) notifies the accused of the charges to be defended against, and 3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense."  *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002).  In assessing whether an indictment is sufficient, its allegations are to be accepted as true and "viewed in the light most favorable to the government . . . ."  *United States v. McGarity*, 669 F.3d 1218, 1235 (11th Cir. 2012).  Pursuant to Rule 12(b)(3)(B)(v), an indictment may be dismissed for "failure to state an offense."

### B.     Relevant Statutes.

The Indictment charges Ms. Jones with bank fraud and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349.  The offense of bank fraud is defined as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice-

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

The crime of conspiracy is defined as follows:

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 1349.

### C.   The Indictment Does Not State the Offenses of Bank Fraud or Conspiracy to Commit Bank Fraud Against Ms. Jones.

Neither the Bank Scheme nor the Purchaser Scheme states the offenses of bank fraud or conspiracy to commit bank fraud against Ms. Jones.  As such, the Indictment against her should be dismissed for failure to state an offense, pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v).

#### 1.   The Bank Scheme.

The bank fraud statute, 18 U.S.C. § 1344, defines two crimes: clause (1) prohibits knowingly executing a scheme "to defraud a financial institution," and clause (2) applies to a scheme to obtain property "owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises."  The Indictment purports to charge Ms. Jones with bank fraud under both clauses.  *See* Doc. 12 at ¶ 46 (incorporating the language of both clauses.)

As discussed above, the Bank Scheme allegedly involved a series of misrepresentations to the financial institutions in an attempt to induce them to extend credit to Lake Austin.  (Doc. 12, ¶¶ 31-43, 46.)  Those misrepresentations included the alleged submission of false financial

6

statements and misstatements to lenders regarding the use of buyer's down payments to pay commissions. (*Id.*)  Ms. Jones, however, is not alleged to have had any involvement in any misstatements to a financial institution, nor is she alleged to have had knowledge of any such misstatements.  Ms. Jones is not alleged to have had any contact or involvement with the lenders at all.  Instead, the Indictment alleges that she served as the vice president of sales for Maesbury Homes and Lake Austin, and that she "communicated with property buyers in sending correspondence and answering questions."  These allegations may be pertinent to the Purchaser Scheme - as discussed further below - but they are not relevant to the Bank Scheme.

Although none of the allegations underlying the Bank Scheme reference Ms. Jones specifically, several allege misconduct by Lake Austin, her former employer (according to the Indictment.)  For example, the Indictment alleges that "Lake Austin submitted false financial statements for 2005 to obtain the loan."  (Doc. 12 at ¶ 38.)  This allegation, however, does not state the offense of bank fraud against Ms. Jones as she is not alleged to have been involved in the submission of any false financial statements.  Indeed, the Indictment specifically alleges that Defendants Lunde and Johnson had knowledge of the submission of false financial statements, *see* Doc. 12 at ¶ 39, and it contains no such allegations against Ms. Jones.  Moreover, as noted above, the Indictment describes Ms. Jones' role with Lake Austin as being limited to communicating "with property buyers in sending correspondence and answering questions," and not anything to do with lenders.  Allegations that Ms. Jones' former employer, Lake Austin, committed fraudulent acts is insufficient to state the offense of bank fraud against Ms. Jones, as it does not put her on notice of whether she is alleged to have been involved in that conduct. *Woodman, supra*, 296 F.3d at 1046 (Indictment must put defendant on notice of the charges.)

Because none of the allegations underlying the Bank Scheme reference Ms. Jones, those allegations do not state the offense of bank fraud against her.

For the same reasons, the alleged Bank Scheme does not state the offense of conspiracy to commit bank fraud against Ms. Jones.  To state the offense of conspiracy to commit bank fraud, an indictment must allege that (1) two or more persons agreed to a common and unlawful plan to commit bank fraud; (2) the defendant knew of the unlawful plan; and (3) the defendant knowingly and voluntarily joined the plan.  *United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015).  Among other defects, the Indictment does not allege that Ms. Jones knew of the unlawful plan, or that she knowingly and voluntarily joined the plan.  Because the Bank Scheme allegations are bereft of any allegations that Ms. Jones participated in any of the alleged acts - or that she even had knowledge of them - the Indictment fails to state the offense of conspiracy to commit bank fraud against Ms. Jones related to that scheme.

## 2.   The Purchaser Scheme.

As discussed above, the bank fraud statute defines two crimes: (1) a scheme to defraud a financial institution, and (2) a scheme to obtain the money or property under the custody or control of a financial institution, even if the fraud is not directed at the financial institution itself. 18 U.S.C. § 1344(1) and (2).  The allegations supporting the Purchaser Scheme do not allege a crime falling under either clause, and therefore do not state the offense of bank fraud against Ms. Jones (or any of the defendants.)

### a.   The Purchaser Scheme Was Not a Scheme to Defraud a Financial Institution Under 18 U.S.C. § 1344(1).

The offense defined by 18 U.S.C. § 1344(1) is a scheme "to defraud a financial institution."  The plain language of that subsection shows that the alleged scheme must have

been directed at the financial institution itself.  *See, e.g., Loughrin v. United States*, 134 S. Ct. 2384, 2389-90 (2014) ("The first clause of § 1344, as we all agree, includes the requirement that a defendant intend to 'defraud a financial institution'; indeed, that is § 1344(1)'s whole sum and substance."); *United States v. Loughrin*, 710 F.3d 1111, 1116 n.1 (10th Cir. 2013) (same).

Here, however, the Indictment explicitly alleges that the Purchaser Scheme was a "scheme to defraud **the purchasers of condominium units** at Lake Austin."  (Doc. 12 at ¶¶ 28-30 (emphasis added.)   The Indictment alleges that these purchasers were defrauded when their down payments were used to pay commissions, when they were induced to make an additional payment of a "rental guarantee," and when misrepresentations were made to induce them to remain invested and not request refunds of their deposits.  (*Id.*, ¶¶ 28-30, 46(ee) - (hh).)  Because the Purchaser Scheme is explicitly alleged to have been a "scheme to defraud purchasers," and not a financial institution, it does not state the offense of bank fraud under 18 U.S.C. § 1344(1). *See Loughrin v. United States, supra*.

> **b.      The Purchaser Scheme Was Not Intended to Obtain "Bank Property" and Thus Was Not Bank Fraud under 18 U.S.C. § 1344(2).**

The Purchaser Scheme fares no better under 18 U.S.C. § 1344(2).  The offense of bank fraud under subsection (2) does not require specific intent to defraud a bank, as required under subsection (1).  *Loughrin v. United States, supra*.  It does require, however, that the scheme seek to obtain money or property owned by or under the custody of a bank.  *Id.*   Because the Purchaser Scheme did not involve any property owned or in the custody of any of the banks in the Indictment, it does not state the offense of bank fraud under 18 U.S.C. § 1344(2).

In *Loughrin, supra*, the United States Supreme Court considered the scope of 18 U.S.C.

1344(2). Loughrin was charged with bank fraud under 18 U.S.C. § 1344(2), arising from a scheme in which he would steal checks from mailboxes, and then use those checks to purchase merchandise at Target. 134 S. Ct. at 2387. After purchasing the items at Target, Loughrin would return to the store and return the items for cash. *Id.* Each of the checks that Loughrin presented to Target was drawn on an account at a federally insured bank. *Id.* At least two of the checks were paid by the banks to Target, causing a loss for the bank. *Id.* Loughrin was convicted of bank fraud under 18 U.S.C. 1344(2), and he appealed. The Tenth Circuit affirmed his conviction, and the Supreme Court granted *certiorari*.

The "single question presented" on appeal was whether the defendant must intend to defraud a bank to commit bank fraud under 18 U.S.C. § 1344(2).[1] Loughrin argued that he never intended to defraud a bank, and instead only intended to defraud Target. The Court rejected that argument, and held that specific intent to defraud a bank was not a required element under 18 U.S.C. 1344(2). Instead, the Court held that the elements of that offense are: (1) a goal of obtaining bank property, (2) a false representation to obtain the bank property, and (3) the acquisition or attempted acquisition of the bank property "by means of" the representation. *Id.* at 2392.[2]

More recently, in *Shaw v. United States*, the Supreme Court again considered the reach of 18 U.S.C. § 1344(2). *Shaw*, 137 S. Ct. 462, 2016 U.S. LEXIS 7431 (2016). The defendant in *Shaw* argued that because he only intended to defraud the accountholder, and not the bank, he

---

[1] As noted above, the Court in *Loughrin* noted that specific intent to defraud a bank was plainly an element of bank fraud under 18 U.S.C. 1344(1).

[2] The Court explained that "[u]nder that clause [18 U.S.C. 1344(2)], it is not enough that a fraudster scheme to obtain money from a bank and that he make a false statement. The provision as well includes a relational component: The criminal must acquire (or attempt to acquire) bank property 'by means of' the misrepresentation." *Loughrin*, 134 S. Ct. at 2392.

did not possess the intent required by 18 U.S.C. § 1344(2).   The Supreme Court disagreed, finding that even though the bank did not own the funds held in the account, it held a property interest in them.   *Id.* at 466.   Accordingly, the purpose of the scheme was to obtain bank property, especially where "the defendant knew that the bank held the deposits, the funds obtained came from the deposit account, and the defendant misled the bank in order to obtain those funds." *Id.*

The common thread running through the Supreme Court's decisions in *Loughrin* and *Shaw* is that "bank property" must be the object of the scheme.   *Loughrin*, 134 S. Ct. at 2392; *Shaw*, 137 S. Ct. at 466.   That "significant textual limitation" comes from the language of the statute itself, which limits its application to fraudulent conduct to obtain the "moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a *financial institution*."  18 U.S.C. § 1344(2) (emphasis added).[3]

Here, no bank property was sought or implicated by the Purchaser Scheme described in the Indictment.   Indeed, the Indictment expressly describes the Purchaser Scheme as a "scheme to defraud the purchasers of condominium units."   (*Id.,* ¶¶ 28-30.)   The Indictment further describes the object of the Purchaser Scheme as the funds paid by the buyers of the condominium units, either for down payments or "rental guarantee" fees.  (Doc. 12, ¶¶ 28-30.) The Indictment further alleges that Ms. Jones improperly obtained funds through the Purchaser Scheme, and that "[t]hese funds were deposits from buyers of condominium units at Lake

---

[3]      The legislative history of 18 U.S.C. § 1344 also shows that a bank must be the ultimate victim of bank fraud.  The Senate report regarding 18 U.S.C. § 1344 states that "the offense of bank fraud in this part is designed to provide an effective vehicle for the prosecution of frauds in which *the victims are financial institutions* that are federally created, controlled, or insured."  S. Rep. No. 225, 98th Cong., 1st Sess. 377 (1983) (emphasis added).  The House report similarly states that section 1344 is concerned with "fraudulent schemes *where banks are victims*."  H.R. Rep. No. 901, 98th Cong., 2d Sess. 2, 6 (1984) (emphasis added).

11

Austin." (*Id.*, ¶¶ 46(m) and (r).)  Nowhere does the Indictment allege that any property of a financial institution was ever the object of the Purchaser Scheme.

The Indictment also does not allege any connection between any of the condominium purchasers and any of the banks referenced in the Indictment.  The Indictment does not allege, for example, that the purchasers borrowed money from any of the banks to make their deposits to Lake Austin, such that the misappropriation of those funds could potentially expose the bank to a risk of loss.  The Indictment simply alleges that the defendants defrauded purchasers of their deposits and other payments, without any mention of a link to a financial institution that could bring that alleged scheme under the reach of 18 U.S.C. § 1344(2).  The absence of any nexus between a financial institution and the Purchaser Scheme is a fatal defect, and that scheme does not state the offense of bank fraud 18 U.S.C. § 1344(2).

**IV.    Conclusion.**

For the foregoing reasons, the Indictment against Ms. Jones should be dismissed for failure to state an offense, pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.

Respectfully submitted this 19th day of September, 2017.

STOVASH, CASE & TINGLEY, P.A.

By: */s/ Amy S. Tingley*
Amy S. Tingley, Esquire
Florida Bar Number 0068871
Primary Email: atingley@sctlaw.com
The VUE at Lake Eola
220 North Rosalind Avenue
Orlando, Florida 32801
Telephone:  (407) 316-0393
Telecopier:  (407) 316-8969

12

*And*

By: */s/ Michael J. Snure*
Michael J. Snure, Esquire
Michael J. Snure P.A.
Florida Bar Number 363235
Primary Email: snurem@criminaldefenselaw.com
425 W.  New England Avenue, Suite 200
Winter Park, Florida 32789
Telephone: (407) 469-6200
Telecopier: (407) 645-0805

*Counsel for Defendant, Helen Jones*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing **Defendant Helen Jones' Motion to Dismiss Indictment for Failure to State an Offense** to be served in the method indicated below to the following this 19th day of September, 2017.

___HAND DELIVERY
___U.S. MAIL
___FAX TRANSMISSION
___E-MAIL TRANSMISSION
**X** CM/ECF NOTICE

W. Stephen Muldrow, Esquire
Acting United States Attorney
400 West Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500

___HAND DELIVERY
___U.S. MAIL
___FAX TRANSMISSION
___E-MAIL TRANSMISSION
**X** CM/ECF NOTICE

Nathan W. Hill, Esquire
Assistant United States Attorney
400 West Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500

___HAND DELIVERY
___U.S. MAIL
___FAX TRANSMISSION
___E-MAIL TRANSMISSION
**X** CM/ECF NOTICE

Joseph Michael McGroder, Esquire
Kathleen A. Fisher, Esquire
Nathan F. Garrett, Esquire
Graves Garrett, LLC
1100 Main St , Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181

___HAND DELIVERY
___U.S. MAIL
___FAX TRANSMISSION
___E-MAIL TRANSMISSION
**X** CM/ECF NOTICE

Vincent Albert Citro, Esquire
Law Offices of Mark L. Horwitz, PA
17 E Pine St
Orlando, Florida 32801
Telephone: (407) 843-7733

___HAND DELIVERY
___U.S. MAIL
___FAX TRANSMISSION
___E-MAIL TRANSMISSION
**X** CM/ECF NOTICE

Amber J. Moren, Esquire
Fredrikson & Byron, PA - MN
200 South Sixth Street, Suite 400
Minneapolis, MN 55402
Telephone: (612) 492-7378

14

| | |
|---|---|
| ___HAND DELIVERY<br>___U.S. MAIL<br>___FAX TRANSMISSION<br>___E-MAIL TRANSMISSION<br>**X** CM/ECF NOTICE | Gerald M. Handley, Esquire<br>1100 Main Street, Suite 2800<br>Kansas City, MO 64105<br>Telephone: (816) 472-6009 |
| ___HAND DELIVERY<br>___U.S. MAIL<br>___FAX TRANSMISSION<br>___E-MAIL TRANSMISSION<br>**X** CM/ECF NOTICE | Joseph Thomas Dixon, Esquire, III<br>Fredrikson & Byron, PA<br>200 S. 6th St, Suite 4000<br>Minneapolis, MN 55402-1425<br>Telephone: (612) 492-7258 |
| ___HAND DELIVERY<br>___U.S. MAIL<br>___FAX TRANSMISSION<br>___E-MAIL TRANSMISSION<br>**X** CM/ECF NOTICE | Fritz J. Scheller, Esquire<br>Fritz Scheller, PL<br>200 E Robinson St, Suite 1150<br>Orlando, Florida 32801<br>Telephone: (407) 792-1285 |
| ___HAND DELIVERY<br>___U.S. MAIL<br>___FAX TRANSMISSION<br>___E-MAIL TRANSMISSION<br>**X** CM/ECF NOTICE | A. Brian Phillips, Esquire<br>A. Brian Phillips, PA<br>912 Highland Ave<br>Orlando, Florida 32803<br>Telephone: (407) 872-0777 |

*/s/ Amy S. Tingley*
Amy S. Tingley